## STATE v. CHARLES ROBERTS.

156 N. W. (2d) 760.

February 23, 1968—No. 40,851.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy* and *Robert E. Oliphant,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, *William B. Randall,* County Attorney, and *Thomas M. Quayle,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

NELSON, JUSTICE.

Appeal from a judgment of conviction of third-degree murder.

It appears that on June 22, 1966, defendant, Charles Roberts, also known as Butch Fontaine, then 19 years of age, shot and killed one Roger Milan with a .22-caliber derringer pistol in the vicinity of Marshall Avenue and Mackubin Street in St. Paul. Defendant was born in Lansing, Michigan, and after coming to St. Paul in 1960 completed the tenth grade at Central High School. He is referred to as

"a somewhat hostile lad from a broken home" who had been confined at the Youth Conservation Commission for some time at an early age. It appears also that he spent some time at the State Training School for Boys at Red Wing, where he states he was taking laundry work. He was unmarried and lived with his mother at the time of his arrest.

Defendant had a girl friend, Clara King, and came to her apartment near Marshall and Mackubin about midnight on June 22, 1966, where he saw the victim, Roger Milan, for the first time. Words were exchanged between defendant and decedent, although the record does not reveal what was said. Defendant, however, ordered decedent out of the apartment and decedent left through the back door. The record does not indicate how soon decedent left or what may have transpired in the meantime. The transcript of the presentence interrogation discloses that defendant went out the front door to the corner of the Marshall and Mackubin intersection where he saw decedent about 50 feet away near his car on Mackubin. Decedent uttered some swearwords, and defendant fired his pistol twice in decedent's direction. Defendant saw decedent appear to run or limp toward his car, at which point defendant "took off." The record also indicates that at the time he was arraigned on the charge of third-degree murder defendant realized that the blast from the derringer had hit decedent, causing his death.

Defendant testified he had not been drinking at the time and that he was conscious of what he was doing. He said he thought decedent had a weapon in his hand, but could not actually identify one. There is nothing in the record to indicate that decedent was in a belligerent or intoxicated state at the time defendant found him in Clara King's apartment, as defendant now claims. Neither is there anything in the record supporting defendant's claim that he went to the police when he heard decedent was dead.

Defendant was indicted by a grand jury on August 11, 1966, upon a charge of murder in the second degree.

Roger R. Lenzmeier, assistant public defender, represented defendant and conducted an investigation of the circumstances surrounding

decedent's death. This included interviews with three witnesses— Clara King, whose apartment defendant visited the night of the shooting; Perline Jones; and Bonnie Martin. An autopsy was performed on decedent and Mr. Lenzmeier reviewed and discussed the report thereof with defendant before defendant was arraigned on the third-degree murder charge on October 5, 1966. Defendant's counsel at that time informed the court that he had talked with the county attorney's office and had discussed the charge with defendant, and that defendant was ready for arraignment on a charge of murder in the third degree.

An information charging murder in the third degree was thereupon filed, defendant arraigned, and his plea of guilty entered. The indictment was thereafter dismissed. Defendant was then sworn and questioned at length by Paul E. Lindholm, assistant county attorney, and by his own counsel. The questioning showed that defendant knew of his counsel's investigation of the crime.

Defendant was asked by the assistant county attorney:

"Q. The Public Defender has been assigned to represent you and Mr. Lenzmeier is present with you in court today?

"A.    Yes.

"Q.    And I take it you have talked this matter over with him and discussed it with him and counseled with him prior to your coming to court today?

"A.    Yes.

"Q.    You have pleaded guilty to the crime of murder in the third degree, which means you killed a man while you were in the commission of an aggravated assault with a dangerous weapon, in this case a gun, against him. Do you understand the nature of the offense to which you have pleaded guilty?

"A.    Yes.

"Q.    Have any threats or promises been made to you in an effort to get you to plead guilty?

"A.    No.

"Q.    Did you enter your plea of your own free will?

"A.    Yes.

"Q. Do you understand you would have a right to plead not guilty and the right to have a trial by a jury in this case?

"A. Yes.

"Q. And do you understand that at such a trial you would be presumed to be innocent, and to convict you the State would have to prove your guilt beyond a reasonable doubt?

"A. Yes.

"Q. Do you realize you would not have to testify at your trial if you didn't wish to?

"A. Yes.

"Q. And do you realize that failure to take the stand by you could not be commented by the court or counsel?

"A. Yes.

"Q. Do you understand that any verdict against you would have to be unanimous, that is, by all twelve?

"A. Yes.

"Q. Do you realize that your plea of guilty in this case subjects you to a possible term of imprisonment of up to 25 years?

"A. Yes.

"Q. Do you understand you have a right to a notice and a hearing out of the presence of the jury before the trial to determine whether or not certain evidence can be used against you at the trial?

"A. Yes.

"Q. And do you wish to waive this right and proceed with your plea of guilty at this time?

"A. Yes.

"Q. Do you realize that by your plea of guilty you have waived all of your other rights which I previously mentioned?

"A. Yes."

■ The principal legal issue appears to be whether defendant entered an intelligent plea of guilty with knowledge of his legal rights under the facts and the law applicable to this case. Based on his statements at the arraignment, we think it must be held that he did. Defendant did not deny his guilt. His plea of guilty to the information was made by him with complete appreciation of his legal position and

constitutional rights. The trial court could, taking into account the complete examination made after the arraignment, reasonably find that the statements and admissions made by defendant before the court were freely and voluntarily made and that no force, persuasion, or undue influence was used to obtain these statements from him. State v. Kramer, 272 Minn. 454, 139 N. W. (2d) 374. The record, so much as there is of it, indicates clearly that defendant's admissions of guilt were voluntary, as was his plea of guilty entered in the presence of his counsel.

■ Defendant's claim that he did not receive adequate representation by counsel has no support in the record. Instead, it indicates that defense counsel gave full and effective assistance to defendant to the extent that he was both adequately and ably represented. Certainly failure of defense counsel to interpose defenses, such as that of self-defense, which on the record would have been without merit does not constitute inadequate representation. See, State v. Mathiasen, 273 Minn. 372, 141 N. W. (2d) 805; cf. State v. Mickens, 276 Minn. 343, 150 N. W. (2d) 30; State v. Blankenship, 277 Minn. 32, 151 N. W. (2d) 410; see, also, State v. Ferraro, 277 Minn. 204, 152 N. W. (2d) 183; State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785; State v. Lund, 277 Minn. 90, 151 N. W. (2d) 769; State ex rel. Adams v. Rigg, 252 Minn. 283, 89 N. W. (2d) 898, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149; State ex rel. Peterson v. Tahash, 260 Minn. 192, 109 N. W. (2d) 328; State ex rel. Alm v. Tahash, 261 Minn. 242, 111 N. W. (2d) 458.

No duty rested upon the trial court herein to refuse to take defendant's plea of guilty or to enter a plea of not guilty on his behalf, since defendant at no time denied his guilt or suggested a valid defense. No defense or mitigating circumstances were asserted to the court, even when the court gave to counsel for both sides a chance to speak prior to the sentence. The record leaves no doubt that defendant's guilty plea was made intelligently and understandingly. In this case, no motion was made by defendant to change his plea from guilty to not guilty in order to allege certain defenses to the charge. All that defendant did was to seek to have this court vacate

his plea. Thus, the cases cited and relied upon by defendant are not applicable.

Taking into account the proceedings as a whole, we are bound to conclude that the trial court was satisfied of the voluntary character of the plea, that defendant received effective representation by counsel, and that he was fully informed of the nature of the crime with which he was charged and of the consequences of a conviction. The trial court under the circumstances did not err in accepting defendant's plea of guilty.

Affirmed.