# CHRISTIAN C. COOLEN v. STATE.

179 N. W. (2d) 81.

July 17, 1970—No. 41670.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *John R. Kenefick,* Special Assistant Attorney General, and *Glen W. Swenson,* County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, William P. Murphy, Otis, and James F. Murphy, JJ.

NELSON, JUSTICE.

Appeal from an order of the district court dismissing defendant-appellant's petition for postconviction relief.

On March 3, 1961, the body of one Hattie Busett was found on her farm in Wright County, Minnesota. She had been fatally shot in the back of the head with a .22-caliber rifle. Subsequent to the discovery of the body, defendant, Christian Charles Coolen, was arrested for driving an automobile without a license. A search of the car revealed under its back seat a .22-caliber rifle with an empty shell in the chamber. The arresting officer was informed by police radio that the vehicle which defendant was driving had been reported stolen. Defendant was taken to the Duluth municipal court building. There, during a three-way telephone conversation between defendant, the arresting officer, and a deputy sheriff, defendant stated that he had shot Hattie Busett and disclosed the location of the body.

After the body was located, a long interrogation followed involving defendant and the sheriff, his deputy, a secretary, and defendant's probation officer. Defendant's counsel was not present at the interrogation. It was not until immediately prior to his making a confession admitting the shooting of Hattie Busett that defendant was advised that he did not have to make a statement and that, if he did, it could be used in court.

Defendant was charged by indictment with first-degree murder. He entered a plea of not guilty.

At the trial prior to the presentation of the defense, defendant's court-appointed counsel, upon obtaining knowledge that recently discovered evidence would confirm the element of deliberation necessary to a conviction for first-degree murder, made an application to permit defendant to plead guilty to second-degree murder. The prosecution accepted the plea of guilty to second-degree murder and withdrew the charge of murder in the first degree. Standing convicted upon his own plea to a violation of Minn. St. 1961, § 619.08, second-degree murder, defendant was sentenced to a term of not less than 15 nor more than 40 years.

On May 14, 1968, defendant filed a petition for postconviction relief, alleging that he had entered his guilty plea under a genuine misapprehension of his constitutional rights in that he believed he would receive a 4- or 5-year sentence for pleading guilty. The petition also alleged that defendant was denied the effective assistance of counsel.

At the postconviction hearing, defendant, the only witness to testify, stated that he had pled guilty to second-degree murder because the deputy sheriff had told him, and he had believed, that his sentence would be only 4 or 5 years. Defendant said this belief was supported by the fact that on a previous charge of burglary the deputy sheriff had told him he would receive probation if he pled guilty, and he did in fact receive probation.

Defendant also testified that the county attorney, Mr. Walter Johnson, approached him in his cell and informed him that he

would serve only 4 or 5 years if he pled guilty to second-degree murder. Defendant also testified that his counsel had failed at trial to object to testimony which indicated defendant had a previous criminal record. With respect to the shooting itself, defendant stated he was holding the rifle when it discharged, but he did not intend to kill Hattie Busett.

Subsequent to the postconviction hearing, affidavits were submitted by Mr. Johnson, the county attorney who tried the case, and by defendant's court-appointed counsel, now Judge Carroll E. Larson. Mr. Johnson stated that he did not discuss defendant's sentence or his chances of parole with him. Mr. Johnson stated that the only discussion concerning the sentence was with Judge Larson, wherein both agreed that the court was bound by the statute, and anything done would have no immediate effect on parole.

Judge Larson's affidavit relates the circumstances under which defendant pled guilty to second-degree murder. The affidavit indicates that Judge Larson and defendant conferred extensively throughout the proceedings. Judge Larson felt the proper charge should have been murder in the third degree, and in order to so reduce the charge, defendant would have had to testify with regard to facts indicating depravity of the mind. However, defendant refused to testify. These developments, along with the expected testimony of defendant's girl friend regarding premeditation, led counsel and defendant to agree that a plea of guilty to murder in the second degree would be appropriate. The affidavit indicates that at no time was there ever a promise or even a hint of leniency on the part of the court or the state.

The postconviction court found that defendant entered his plea of guilty after full consultation with his counsel and after he had been fully advised as to his rights and the consequences of his plea. The court further found that defendant was effectively and adequately represented by his counsel and that neither defendant's counsel nor the county attorney presented defendant with

facts which would lead him into a misapprehension of his constitutional or legal rights. The court also found that defendant was fully advised of the possible sentence that might be imposed if he pled guilty to murder in the second degree. Consequently, on September 12, 1968, the district court dismissed defendant's petition.

The issues presented on this appeal are: (1) Did defendant prove by a preponderance of the evidence at the postconviction hearing that he had entered the plea of guilty to the crime of murder in the second degree because of promises by the deputy sheriff and the county attorney that a 4- or 5-year prison sentence would be imposed? (2) Was defendant denied effective assistance of counsel?

Defendant contends that (1) he was promised a short prison sentence in return for a plea of guilty to second-degree murder; (2) the court did not obtain from defendant an admission of intent necessary to a conviction of second-degree murder; and (3) that his plea of guilty was based upon and prompted by an illegal confession.

■ We have frequently held that an application to withdraw a plea of guilty is addressed to the sound discretion of the trial court and should be granted whenever necessary to correct a manifest injustice. See, Chapman v. State, 282 Minn. 13, 162 N. W. (2d) 698. A plea of guilty in open court should not be accepted from one who has not been advised of the nature and elements of the offense charged; nor should the plea be induced by misapprehension or ignorance. The court should not accept a plea where it appears doubtful that it has not been made intelligently and understandingly. State v. Jones, 267 Minn. 421, 127 N. W. (2d) 153.

This court has held in a number of recent cases that a district court is authorized to vacate a plea of guilty where the claim was made that (1) defendant was not adequately afforded the advice of competent counsel (State v. Waldron, 273 Minn. 57, 139 N. W. [2d] 785); (2) an agreement made by the prosecution to induce

the plea was not fulfilled (State v. Wolske, 280 Minn. 465, 160 N. W. [2d] 146); (3) the defendant did not understand the nature and elements of the offense charged and the consequences of his plea (State v. Roberts, 279 Minn. 319, 156 N. W. [2d] 760; State v. Adkison, 279 Minn. 1, 155 N. W. [2d] 394); (4) statements made by defendant at the time his plea was interposed or prior to sentencing negated the existence of an essential element of the crime charged and were inconsistent with the plea (Chapman v. State, 282 Minn. 13, 162 N. W. [2d] 698; State ex rel. Schuler v. Tahash, 278 Minn. 302, 154 N. W. [2d] 200). See, also, A. B. A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968), § 2.1.

■ Under the above precepts, it was incumbent upon defendant in the instant case to prove by a fair preponderance of the evidence that he made his guilty plea under the belief that he was to receive only a 4- or 5-year sentence and that he did not understand the nature and elements of the offense charged and the consequence of his plea.

■ An examination of the record as a whole leads us to conclude that the evidence sufficiently supports the district court's refusal to grant postconviction relief. At the trial there was no indication that defendant did not understand the nature of the charge and the consequences of his plea. The following colloquy, which took place subsequent to counsel's application to plead guilty and the state's acceptance of such plea, supports this conclusion:

"THE COURT: Will the defendant come forward, please. Now then, Christian Coolen, have you heard what your counsel has advised the court in open court? THE DEFENDANT: Yes.

"THE COURT: He advised the court that you are willing to withdraw your plea of not guilty to the indictment by which you have been charged with the crime of murder in the first degree and that you withdraw your plea of not guilty by reason of insanity and imbecility and idiocy? THE DEFENDANT: Yes.

50

"THE COURT: He has offered on your behalf to enter a plea of guilty to murder in the second degree. THE DEFENDANT: Yes.

"THE COURT: Is that your wish? THE DEFENDANT: Yes.

"THE COURT: You have gone over this matter with your attorney.

"THE DEFENDANT: Yes.

"THE COURT: You understand fully the seriousness of the charge to which you're entering a plea of guilty and—

"THE DEFENDANT: Yes.

"THE COURT: —the penalties that the court may impose upon such a plea. THE DEFENDANT: Yes.

"THE COURT: You understand that. THE DEFENDANT: Yes.

"THE COURT: Do you feel that you have been fully advised in the matter? THE DEFENDANT: Yes."

Subsequent to defendant's plea of guilty to murder in the second degree, the court questioned defendant concerning the plea:

"Q. [The court]: Now, you have entered a plea of guilty to the crime of murder in the second degree. A. Yes.

"Q. Do you make any claim at this time that you have been abused by any of the public officials of this county—

"A. No.

"Q. —or that you have [been] threatened or coerced in any way by any of the public officials of this county or of the state or the county attorney? A. No.

"Q. *You have been made no promises of any kind.* A. No.

"Q. *You have done this purely voluntary on your own part.*

"A. *Yes.*

"Q. You have made this plea of guilty because you know, do you, in your own heart that you're guilty of this crime?

"A. Yes." (Italics supplied.)

At the postconviction hearing defendant asked the court to disbelieve his sworn testimony and believe instead that various authorities promised him a 4- or 5-year sentence. This assertion, however, is contrary to sworn statements appearing in the affi-

davits of both the county attorney and defendant's court-appointed counsel. Furthermore, defendant's assertion directly contradicts his own testimony given under oath at the time of his guilty plea.

In State ex rel. Becker v. Tahash, 265 Minn. 458, 122 N. W. (2d) 100, a case similar to the one presently before us, we affirmed the lower court's denial of a habeas corpus petition for vacation of a guilty plea. The petition alleged that both the county attorney and petitioner's own counsel promised that if petitioner pled guilty he would not be sentenced as an habitual offender. In holding that there was no factual basis for such allegations, we stated (265 Minn. 461, 122 N. W. [2d] 103):

"* * * The fatal deficiency of the petition is that the allegation that his plea was induced by promises or threats is in direct conflict with petitioner's testimony when he entered the plea."

In the instant case there was nothing adduced at the postconviction hearing which supported the defendant's position other than defendant's own testimony. There was in the original transcript of the arraignment, plea, and sentencing unequivocal testimony under oath by defendant indicating that no promises had been made to him to induce him to plead guilty and that his plea was entirely voluntary.

State v. Wolske, 280 Minn. 465, 160 N. W. (2d) 146, relied upon by defendant, is distinguishable. In that case there was proof of a plea agreement between the defendant, his counsel, and the county attorney, and the making of the agreement and its terms were disclosed in the attorneys' affidavits which were filed in response to defendant's motion to withdraw his plea. The court held that defendant should be allowed to withdraw his guilty plea, based upon the fact that there was a plea agreement and the prosecution did not fulfill its part of the agreement. In the instant case, however, as already pointed out, there is no proof of any plea agreement except defendant's own testimony at the postconviction hearing.

With respect to defendant's contention that his plea should be set aside on the grounds that the court did not obtain an admission of intent necessary to a conviction, the same analysis may be applied as was applied to defendant's contention that his plea was induced by promises of a light sentence. In other words, the only evidence of inconsistencies between defendant's testimony and his guilty plea arose at the postconviction hearing, wherein defendant stated he did not intend to shoot the victim. The record of the plea and sentencing proceedings shows no inconsistencies. Thus, the case of Chapman v. State, *supra,* wherein defendant testified *after* his plea of guilty but *before* sentencing that he did not intend to kill the victim, is distinguishable. See, also, State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723.

■ With respect to defendant's contention that his plea of guilty to second-degree murder was prompted by an illegal confession, we hold that since the proceedings in question occurred prior to the United States Supreme Court's decisions in Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977, and Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, the confession given by defendant to the sheriff was not illegally obtained. Thus, the plea was not based upon an illegal confession.

■ We hold, therefore, that defendant's plea of guilty to murder in the second degree was freely and voluntarily made and the court's order refusing to vacate the plea is accordingly affirmed. See, State v. Adkison, 279 Minn. 1, 155 N. W. (2d) 294; State v. Borough, 279 Minn. 199, 156 N. W. (2d) 757; State v. Johnson, 279 Minn. 209, 156 N. W. (2d) 218; State v. Roberts, 279 Minn. 319, 156 N. W. (2d) 760; State ex rel. Simonson v. Tahash, 279 Minn. 324, 157 N. W. (2d) 84; Adler v. State, 284 Minn. 31, 169 N. W. (2d) 233; Rollins v. State, 283 Minn. 482, 168 N. W. (2d) 690.

■ With respect to defendant's contention that he was denied effective representation of counsel, we reiterate the general rule

that a presumption exists in a criminal case that court-appointed counsel has adequately represented the accused and has discharged his duties with fidelity. State v. Alma, 261 Minn. 238, 111 N. W. (2d) 517; State ex rel. Grest v. Tahash, 261 Minn. 282, 112 N. W. (2d) 54; State v. Borough, *supra;* Adler v. State, *supra.*

At trial defendant's counsel on cross-examination of the sheriff elicited acts of misconduct on the part of defendant. The sheriff stated that defendant had been in trouble on previous occasions for larceny and burglary and had previously violated his probation. This testimony was not objected to by defendant's counsel. Defendant alleges, therefore, that this is sufficient showing of incompetence of counsel.

In his affidavit counsel for defendant indicated that his theory at trial was to reduce the charge from murder in the first degree to murder in the third degree, and that, by allowing evidence of prior acts of misconduct on the part of defendant, counsel intended to establish that defendant possessed a depraved mind. Thus, counsel's failure to object to the introduction of prior crimes and, in one instance, his own initiation of questions on this subject indicate the trial strategy he intended to use in attempting to reduce the nature of the charge. Such action on the part of counsel falls far short of such a display of incompetence or inefficiency as to make the trial a "farce or a mockery of justice." See, State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785.

Defendant contends further that counsel's failure to object to the introduction of defendant's allegedly illegal confession constitutes gross incompetence on the part of counsel. As pointed out previously, however, according to pre-Escobedo-Miranda standards, defendant's confession was not illegally obtained. Failure of defense counsel to interpose defenses which would have been without merit does not constitute inadequate representation of counsel. See, Adler v. State, *supra;* State v. Roberts, *supra;* State v. Mathiasen, 273 Minn. 372, 141 N. W. (2d) 805.

A careful consideration of the record as a whole discloses that defendant entered a plea of guilty to murder in the second degree without the presence of promises or inducements of any kind and with full knowledge of the gravity of the crime and the possible sentence to be imposed. The record also discloses that defendant's court-appointed counsel discharged his duties with competency and fidelity.

The denial of postconviction relief must be affirmed.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.