Jennifer Diane ANDERSON,
petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A07–91.

Court of Appeals of Minnesota.

April 8, 2008.

---

Stephen P. Doyle, Kevin S. Sandstrom, Robin, Thompson & Doyle, P.A., Wayzata, MN, for appellant.

Lori Swanson, Attorney · General, St. Paul, MN; and Kathleen A. Heaney, Sherburne County Attorney, Leah Emmans, Assistant County Attorney, Elk River, MN, for respondent.

Considered and decided by LANSING, Presiding Judge; ROSS, Judge; and JOHNSON, Judge.

## OPINION

ROSS, Judge.

Jennifer Anderson appeals her conviction of third-degree criminal sexual conduct. After the state charged Anderson for having sex with a child whom she counseled in a juvenile rehabilitation program, she pleaded guilty to one count of criminal sexual conduct in exchange for dismissal of other counts. Anderson argues that her guilty plea cannot form the basis of her conviction because the district court had impermissibly interjected itself into the plea negotiations. She also argues that she was denied her constitutional right to effective assistance of counsel because of her attorney's advice and actions related to her guilty plea. And she argues that the district court erroneously denied her motion to withdraw her plea after sentencing because it was not voluntarily and intelligently made. We hold that the district court did not impermissibly interject itself into plea negotiations. But because Anderson's trial counsel's advice regarding the timing of her motion to withdraw the plea fell below an objective standard of reasonableness and prejudiced Anderson, we reverse and remand.

## FACTS

Jennifer Anderson and M.C. met at the Bar None juvenile rehabilitation facility in 2003, where M.C. was a resident and Anderson was the program counselor. Anderson and her husband became M.C.'s foster parents several days after M.C. left the program.

In early 2004, the Elk River Police Department received a report of sexual contact between Anderson and 15–year–old M.C. After a police investigation, the state charged Anderson with three counts of first-degree criminal sexual conduct, with three counts of fourth-degree criminal sexual conduct, and with contributing to the need for protection, services, or delinquency of M.C. In May 2006, the state amended the complaint to charge two counts of first-degree criminal sexual conduct and two counts of third-degree criminal sexual conduct.

The evidence accumulated during the police investigation supported the state's theory of Anderson's sexual relationship with M.C. The evidence indicated that shortly after M.C. moved into the Andersons' Elk River home in 2003, Anderson began having sexual intercourse and engaging in oral sex with him. M.C. estimated that Anderson had sexual intercourse with him 15 to 20 times and oral sex even more. Anderson's husband confronted Anderson and M.C. with his suspicion about the alleged sexual relationship, and M.C. then moved from the Andersons' home. Although Anderson told police that she had no contact with M.C. after he moved out, police discovered that she made more than 60 telephone calls to M.C. and, according to M.C., often drove to St. Paul to meet and have sex with him.

Anderson pleaded not guilty and the charges were set for jury trial. Two days after the voir dire began, Anderson pleaded guilty to one count of third-degree criminal sexual conduct, and the state dis-

missed the remaining charges. The district court sentenced Anderson to 41 months in prison. Anderson then moved to withdraw her guilty plea, but the court denied the motion. Anderson now appeals from her conviction, raising various challenges to her guilty plea.

## ISSUES

I. Did the district court improperly inject itself into plea negotiations?

II. Was Anderson denied effective assistance of counsel?

## ANALYSIS

### I

 Anderson argues that her guilty plea is invalid because the district court impermissibly injected itself into the plea negotiations that precipitated the plea. The role of the district court during plea negotiations is to determine whether a proffered plea bargain is appropriate and to ensure that the defendant has not been improperly induced to plead guilty. *State v. Johnson*, 279 Minn. 209, 215–216, 156 N.W.2d 218, 223 (1968). It has discretion regarding whether to accept a plea agreement, but it should not participate in the plea bargaining itself. *Id.* It is therefore reversible error for the district court to accept a guilty plea that results from the court's impermissible participation in plea negotiations. *State v. Anyanwu*, 681 N.W.2d 411, 414–15 (Minn.App.2004); *State v. Vahabi*, 529 N.W.2d 359, 360–61 (Minn.App.1995). Impermissible participation includes such things as the court's direct involvement in the negotiations, its imposition of a plea agreement, or its promise to impose a particular sentence. *Vahabi*, 529 N.W.2d at 361.

 Anderson contends that during an in-chambers conference between the district court judge and trial counsel, the judge committed the court to impose a sentence of only four months of work release without imprisonment in exchange for Anderson's guilty plea. This promise induced her to plead guilty, she argues, rendering her plea involuntary. But there is no record of this or any other sentencing promise. Anderson argues that we should credit her assertion that the court made the promise despite the lack of any record of it because neither the prosecutor nor the district court judge expressly denied it. The absence of the judge's or counsel's express denial, however, does not constitute agreement with Anderson's allegation. More important, by denying Anderson's postsentencing plea-withdrawal motion, which was also based on the ground that the court had promised Anderson a sentence of only four months in the work-release program, the same district court judge necessarily rejected Anderson's underlying factual assertion. The implicit finding that the district court made no sentencing promise is challenged on appeal only by Anderson's assertion. This provides an insufficient basis for this court to disregard the district court's implicit determination that it made no such sentencing promise. *Cf. Metro. Fed. Sav. & Loan Ass'n v. Adams*, 356 N.W.2d 415, 421 (Minn.App.1984) (declining to assume facts not found by the district court), *review denied* (Minn. Jan. 2, 1984).

Anderson argues that controlling caselaw should prevent us from being influenced by the lack of any record that the district court judge promised her the four-month nonimprisonment sentence, citing *Vahabi*, 529 N.W.2d 359. But in *Vahabi*, the district court's involvement in the plea negotiations could be inferred from the record. Although the record in that case did not disclose all that had been said before guilty pleas were entered, it reflected that the prosecutor objected at

least twice to the trial court's offer to defer sentencing and to treat felony theft charges as petty misdemeanors. On those facts, this court determined that the record established that the district court promised a particular sentence in advance of the plea. *Vahabi*, 529 N.W.2d at 361.

But we distinguish this case from *Vahabi* because the record here does not demonstrate even indirectly that the district court improperly induced a plea agreement or promised the sentence that Anderson claims. For example, it includes no objection by the state to the court's alleged promise of a four-month sentence. And the terms of the written plea petition state only that Anderson would plead guilty to one count of third-degree criminal sexual conduct in exchange for the state's dismissal of the other three counts. There is also no evidence of other agreed-upon terms or promises regarding the plea agreement. No one during the plea hearing mentioned the possibility of a four-month sentence of any kind, let alone a sentence that would avoid imprisonment. Anderson testified that no one had made any promises to induce her plea, and this concession may be accepted to negate claims of unfulfilled promises. *See State v. Trott*, 338 N.W.2d 248, 252 (Minn.1983) (affirming finding of no promise when defendant's claim that he was promised probation by defense counsel was negated by the plea petition, by his statements made when he entered his plea, and by his counsel's testimony). Anderson's plea petition reflected her understanding that she could be incarcerated up to 15 years, not that she faced only four months' restriction outside of prison. Anderson points to nothing in the record to prove or imply that the district court improperly induced the plea by a promise or was otherwise impermissibly involved in negotiations.

On this record, we hold that Anderson's guilty plea is not invalid by virtue of the district court's alleged improper involvement in the plea negotiations. We turn to Anderson's constitutional argument.

## II

■ Anderson contends alternatively that she was denied effective assistance of counsel regarding her guilty plea. That the criminally accused "shall enjoy the right ... to have the Assistance of Counsel for his defense" is a federal and state constitutional right. U.S. Const. amend VI; Minn. Const. art. I, § 6. And it is well settled that having appointed counsel present at a proceeding is not sufficient to satisfy the constitutional right to counsel. Rather, "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

■ To establish a claim that she received constitutionally ineffective assistance of counsel, Anderson must meet both prongs of the *Strickland* test: she must show that her attorney's representation fell below an objective standard of reasonableness and that but for the substandard representation the result would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Hathaway v. State*, 741 N.W.2d 875, 879 (Minn.2007). Anderson has the burden of proof and must rebut the strong presumption that her trial attorney's performance fell within a wide range of reasonable assistance. *Gail v. State*, 732 N.W.2d 243, 248 (Minn.2007). This court may address the two prongs of the test in any order and resolve the claim on one prong without analyzing the other. *Schleicher v. State*, 718 N.W.2d 440, 447 (Minn.2006).

Anderson cites three incidents of alleged ineffective representation. She claims that

she was denied effective assistance of counsel because her trial attorney (1) induced her guilty plea by presenting as a promise the district court's alleged intention to sentence her only to four months of work release; (2) advised her to insincerely admit her guilt to secure the court's acceptance of her guilty plea but then failed to advise her that she must continue to show remorse and falsely admit guilt after her guilty plea during the pre-sentencing investigation; and (3) advised her to delay moving to withdraw her guilty plea until after sentencing despite Anderson's stated desire to move to withdraw before sentencing. We address each allegation of ineffective representation in turn.

■ We are not persuaded by Anderson's contention that her trial counsel's representation fell below an objective standard of reasonableness by his alleged failure to inform her that the court might not impose the four-month work-release sentence that she claims her counsel promised her. Anderson acknowledged during the plea hearing that no promises had been made to her regarding the plea and that she understood that the court might sentence her to 48 months' imprisonment under the plea agreement. Anderson cannot show that she was prejudiced by her trial counsel's alleged failure to explain the uncertain nature of statements that she might receive only a four-month sentence without imprisonment. *See Trott,* 338 N.W.2d at 252 (holding that the defendant's claim that he pleaded guilty because of an unfulfilled promise by his attorney was negated when he signed the guilty plea petition and stated that no promises induced his plea); *see also Coolen v. State,* 288 Minn. 44, 50–51, 179 N.W.2d 81, 86 (1970); *State v. Hamilton,* 280 Minn. 21, 23–24, 157 N.W.2d 528, 529 (1968).

Anderson's claim of ineffective assistance of counsel on this theory therefore fails.

Anderson asserts that she is innocent of the charges and that she pleaded guilty only after her attorney advised her to falsely admit guilt to secure a preferred sentence. She argues that her trial counsel's failure to inform her that she must continue falsely to admit guilt and to show remorse during the pre-sentence investigation constitutes ineffective assistance of counsel. She contends essentially that the district court imposed the lengthy sentence to punish her failure to accept responsibility for the offense, and she faults her attorney for failing to advise her to continue lying. *Cf. In re Disciplinary Action Against Knutson,* 711 N.W.2d 807, 810 (Minn.2006) (noting that advising a client to lie under oath is a serious offense).

■ To the extent Anderson bases her appeal on the notion that it is ineffective assistance for her lawyer to advise her to lie to the court by admitting guilt to a crime her lawyer does not believe she committed, the contention fails for at least three independent reasons. First, the district court's instruction to Anderson and its administration of the oath to tell the truth at her plea hearing superseded any defective advice by her trial attorney that she lie about her guilt. Anderson's sworn duty to tell the truth, as directed by the oath, is too fundamental and obvious an obligation to be dismissed by contrary advice to violate it, even if suggested or encouraged by her attorney. "Our legal system depends on the truthfulness of the testimony of witnesses and false testimony strikes at the very heart of the administration of justice." *In re Disciplinary Action Against Ward,* 563 N.W.2d 70, 72 (Minn. 1997); Minn. R. Evid. 603 (requiring that every witness called to testify must declare by oath that he will testify truthfully); *cf.*

*United States v. Dunnigan*, 507 U.S. 87, 97, 113 S.Ct. 1111, 1118, 122 L.Ed.2d 445 (1993) ("All testimony, from third-party witnesses and the accused, has greater value because of the witness' oath and the obligations or penalties attendant to it."). The alleged advice to lie under oath should be rejected by even the least enlightened defendant in the face of her fundamental duty to tell the truth under oath; the alleged advice to lie therefore cannot be deemed to have prejudiced Anderson under *Strickland.*

■ Second, Anderson also suffered no prejudice from the advice because she received nothing less than she sought as the result of her admission of guilt. It is undisputed that Anderson admitted guilt because she intended the admission to facilitate the outcome she preferred, which was the district court's acceptance of her plea. The district court convicted Anderson because she admitted guilt, not because the admission was false. Truthful or not, the confession of guilt cannot be said to have prejudiced Anderson, because the confession served her intended purpose.

■ Third, despite Anderson's claim that her attorney directed her to falsely assert her guilt, the district court made no finding that Anderson's attorney actually instructed her to falsely assert guilt. It has been said that "[d]efense attorneys realize early in their careers that the vast majority of their clients are factually guilty." *See* F. Andrew Hessick III & Reshma Saujani, *Plea Bargaining and Convicting the Innocent: The Role of the Prosecutor, the Defense Counsel, and the Judge,* 16 BYU J. Pub.L. 189, 211 (2002). Defense attorneys occasionally represent clients who might ardently, but unconvincingly, falsely assert their innocence during privileged consultation with defense counsel. Whether the defendant privately admits guilt or unconvincingly asserts innocence, her counsel's duty to assess the relative strengths and weakness of the prosecution's case and the likelihood of success at trial remains the same when advising whether to enter a guilty plea. In fact, these circumstances have advanced the development of the *Alford* plea. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Because the district court made no finding that Anderson's attorney knowingly counseled her to admit guilt falsely under the plea agreement, Anderson's argument fails even though she may have maintained her innocence in conversations with her attorney.

■ Anderson's related theory that her attorney ineffectively represented her by not advising her to *continue* to lie is a novel one. In our review of the caselaw, we conclude that it would be a significant departure from traditional Sixth Amendment jurisprudence to hold that Anderson's trial counsel violated her constitutional rights by failing to exact from her a more thorough ruse. Anderson cites no case in which an attorney's failure to advise a client to lie has been deemed to violate the constitutional right to counsel. There seems to be no supporting authority, and this case will not fill that void. Counsel's failure to advise Anderson to continue to take responsibility for the offense to which she confessed her guilt does not fall below the objective standard of reasonable representation.

Anderson argues next that her trial attorney's representation was ineffective because he advised her to wait to move to withdraw her guilty plea until after sentencing, rather than before. Given the record as presented, this argument persuades us to remand the case for further proceedings.

When a convicted person claims that her counsel's performance errors led her to plead guilty, she establishes that she has received constitutionally ineffective assistance of counsel by showing that counsel's performance fell below an objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In this related setting, Anderson asserts that her counsel's ineffective representation restrained her from challenging her guilty plea before sentencing. We therefore must decide whether her counsel's performance fell below an objective standard of reasonableness and whether there is a reasonable probability that, but for his errors, Anderson would have brought a pre-sentencing motion to withdraw her guilty plea.

We conclude that counsel's advice responding to Anderson's request to move to withdraw her guilty plea fell below an objective standard of reasonableness. A defendant has the right to decide whether to plead guilty, and her attorney plays a central role in informing that decision. *See Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered."). A defendant who receives advice that is so substandard that it prevents her from making a knowing and understanding decision regarding her plea receives constitutionally deficient advice under the first prong of *Strickland. Hill,* 474 U.S. at 59, 106 S.Ct. at 370. We consider the challenged advice in this context.

The specific nature of the advice is not in dispute. Anderson provided four affidavits, constituting the only evidence introduced regarding her trial counsel's discussion with her concerning the timing of her motion to withdraw her guilty plea. The affidavit testimony of four witnesses—Anderson, her father, her mother, and her husband—is substantially identical. Neither Anderson nor the state provided any conflicting or elaborative testimony, such as might have been available from Anderson's trial attorney. Anderson's affidavit described the discussion with her attorney as follows:

> On August 11, 2006, I arrived at the court for sentencing. Shortly before my sentencing commenced, I learned from my attorney that the judge intended to sentence me to 41 months in prison based upon the results of Mr. Weber's assessment, which apparently stated that I was immoral, dishonest, and did not feel any remorse. When I asked why this happened, my attorney said it was because I refused to take responsibility for my actions.
>
> . . . .
>
> I told my attorney that I wanted to withdraw my plea because the only reason I pleaded guilty was to receive a sentence of four months on work release. My attorney said that I could bring a motion to withdraw my plea before sentencing, but he said that the judge would in all probability deny the motion and then I could be sentenced to an even longer sentence. He stated that my better option would be to express remorse and take full responsibility during sentencing in the hopes of currying favor with the judge to reduce the sentence to less than 41 months. He said that, after sentencing, I should then bring a motion to withdraw my guilty plea. My father and husband were

present during this conversation with my attorney.

This unchallenged testimony establishes without dispute that Anderson's trial counsel advised her not to pursue her stated preferred course to withdraw her guilty plea before sentencing without informing her of the increased risk of failure associated with that strategy. Anderson eventually moved to withdraw her guilty plea, but, following her attorney's advice, she did so only after sentencing. The district court denied the motion. So the significance of her counsel's failure to advise Anderson about the risks associated with delaying her motion depends on whether her knowledge of the risks would have likely led her to bring her withdrawal motion before sentencing. This in turn depends on whether the delay, if properly understood, would be perceived as having a potentially significant impact on the district court's decision to deny the motion. We conclude that it did.

Anderson correctly argues that the standard of proof to withdraw a guilty plea is lower for motions to withdraw that are brought before sentencing, when she sought to bring her motion, than for motions brought after sentencing, when her attorney advised her to bring her motion. *Compare* Minn. R.Crim. P. 15.05, subd. 2 (providing that a district court may allow withdrawal of a guilty plea before sentencing when the defendant shows that it is fair and just to allow withdrawal) *with id.,* subd. 1 (requiring the court to allow a defendant to withdraw a plea of guilty after sentencing when the defendant shows that withdrawal is necessary to correct a manifest injustice). Although the line between these two standards is not always precisely applied in the caselaw, the standards are distinct. The different language establishes that they are substantially dissimilar. *See In re Kleven,* 736 N.W.2d

707, 709 (Minn.App.2007) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (quotation omitted)). And the supreme court has noted the distinction, stating that the fair-and-just standard "is less demanding than the manifest injustice standard." *State v. Theis,* 742 N.W.2d 643, 646 (Minn. 2007); *see also State v. Kaiser,* 469 N.W.2d 316, 319 (Minn.1991) (explaining that the right to withdraw a plea for a manifest injustice applies before or after sentencing but that a district court may allow withdrawal before sentencing on the lesser showing of a fair and just reason to withdraw). Federal cases discussing the nearly identical provisions of the Federal Rules of Criminal Procedure have made the same observation. *See United States v. Scharf,* 568 F.2d 106, 107–08 n. 2 (8th Cir.1978) (noting that the fair-and-just standard is lesser than the manifest-injustice standard); *see also United States v. Farley,* 72 F.3d 158, 162 (D.C.Cir.1995) (noting that after sentencing a defendant must meet a more stringent standard than the more lenient fair-and-just standard).

■■■ The range of bases upon which a motion to withdraw a plea before sentencing may be granted is broad, not limited by the rule. Although a defendant does not have an absolute right to withdraw her guilty plea before sentencing, the district court has substantial discretion to decide whether an asserted reason would make withdrawal fair and just. *Kim v. State,* 434 N.W.2d 263, 266 (Minn.1989). The supreme court has cautioned that an appellate court should reverse the district court's decision regarding whether a defendant has presented a fair-and-just reason for withdrawal "only in the rare case." *Id.* The rule requires the district court to duly consider the stated reasons offered in

support of the motion to withdraw against any prejudice the withdrawal might cause the prosecution because of actions taken in reliance on the guilty plea. Minn. R.Crim. P. 15.05, subd. 2. Otherwise, Minnesota cases have declared only one restriction on the district court's discretion to grant a pre-sentence motion to withdraw, which is that the court may not grant the motion merely "for any reason or without good reason," or else the plea process "would simply be a means of continuing the trial to some indefinite date ... when the defendant might see fit to come in and make a motion to withdraw his plea." *Kim*, 434 N.W.2d at 266.

By contrast, manifest injustice occurs when, for example, a guilty plea is not accurate, voluntary, and intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). So if a defendant was coerced into pleading guilty, "a withdrawal is necessary to correct a manifest injustice and [the] defendant ha[s] a right to withdraw his plea." *Kaiser*, 469 N.W.2d at 319; *see also In re Welfare of J.J.R.*, 648 N.W.2d 739, 743 (Minn.App.2002) (concluding that the defendant who did not admit a sufficient factual basis for his guilty plea was entitled to withdraw his plea to avoid a manifest injustice); *State v. Foncesa*, 505 N.W.2d 370, 373 (Minn.App.1993) (holding that defendant who did not make a knowing and intelligent waiver of right to counsel during her guilty plea was therefore entitled to withdraw her plea after sentencing). The court has also found manifest injustice when the defendant agreed to a specific sentence but did not receive notice until after sentencing that a conditional release term would be imposed, *James v. State*, 699 N.W.2d 723, 729–30 (Minn.2005), when the defendant and the state were mutually mistaken as to the defendant's criminal history score, *State v. DeZeler*, 427 N.W.2d 231, 234–35 (Minn. 1988), and when the district court declines

to give a plea agreement effect, *State v. Loyd*, 291 Minn. 528, 531, 190 N.W.2d 123, 125 (1971).

Despite the substantially different standards, on the record before us it is clear that Anderson's counsel advised Anderson to follow a course that made it more difficult for her to withdraw her guilty plea while failing to warn her of that difficulty. Because Anderson followed that course and waited until after sentencing to move to withdraw her guilty plea, the district court applied the stricter, manifest-injustice standard, and Anderson's motion failed. Although it is conceivable that the district court might have also denied a presentence motion to withdraw even under the more lenient, fair-and-just standard had Anderson brought that motion as she desired, we are in no position to know the arguments that Anderson would have raised or how the district court would have exercised its discretion to decide a presentence motion. It is clear from the record and argument, however, that Anderson likely would have brought the motion before sentencing had she been advised of the increased risk incurred . by waiting. We therefore hold that Anderson's defense counsel's advice to her to defer moving to withdraw her guilty plea until after sentencing, without advising her how the differing standards of proof might affect the decision, prejudiced Anderson. Counsel's conduct as presented on this record prevented Anderson from making an informed decision whether to bring her motion when it had a greater likelihood of success. We offer no opinion about how the district court might exercise its discretion in response to a pre-sentencing motion to withdraw the guilty plea. But we remand for further proceedings to allow Anderson to move the district court to withdraw her guilty plea for consideration under the

more lenient, pre-sentencing, fair-and-just standard.

## DECISION

We hold that the district court did not impermissibly interject itself into plea negotiations. Anderson fails to establish that she received ineffective assistance of counsel when her trial attorney allegedly promised that she would receive a four-month sentence on work release or allegedly counseled her to lie about her guilt. We hold that Anderson received ineffective assistance of counsel, however, when her attorney advised her to wait until after sentencing to move to withdraw her guilty plea without warning her of the increased risk of failure associated with that strategy. We do not reach Anderson's challenge to the district court's denial of her post-sentencing motion to withdraw her guilty plea.

**Reversed and remanded.**