*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1532**

John Wesley Cridge, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed March 2, 2015
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-11-32499

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Smith, Presiding Judge; Ross, Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

John Wesley Cridge pleaded guilty to second-degree criminal sexual conduct, and the district court sentenced him to 60 months in prison. Cridge asked the district court to

allow him to withdraw his plea, arguing that it was not voluntary and intelligent. Because Cridge presented no evidence supporting his contentions that the state coerced him to plead guilty or that he misunderstood his plea, and because his prior statements undermine his postconviction arguments, we affirm.

**FACTS**

In February 2012, John Wesley Cridge pleaded guilty to second-degree criminal sexual conduct. The conviction arose from an August 2011 incident in which Cridge invited a man into his apartment to smoke. Once inside, Cridge forced the man to the floor, hit him in the face, and pinned him down. Cridge then pulled down the man's pants, fondled his genitals, and ejaculated on him.

While in custody awaiting his plea hearing, Cridge signed a plea petition form declaring his intent to plead guilty. On the form he indicated that his inability to post bail did not cause him to plead guilty. And he represented that his guilty plea was voluntary, that no one had made promises or threats to coerce his plea, and that no plea agreement existed. Cridge also noted that although he had previously been a patient in a mental hospital and had been treated by a psychiatrist for a mental condition, he had not recently been ill or taken any medication.

Cridge submitted his petition at his plea hearing, where he testified that he was "of good mental health to understand what's going on here today," was "in a good state of mind," and "knew what was going on." Neither his conduct discernable from the record nor his other statements tend to undermine any of these assertions. After Cridge's guilty plea, the district court granted him conditional release until his sentencing hearing. The

2

next month, the district court sentenced him to a 60-month prison term and a 10-year conditional release period.

Two years after his sentencing, Cridge petitioned the district court for postconviction relief, seeking to withdraw his guilty plea and proceed to trial. Cridge argued that his plea was not voluntary and intelligent. He alleged that he pleaded guilty only because he was desperate to seek medical treatment for unspecified injuries caused by a car collision. He also vaguely asserted that he was confused at the time of his plea.

Cridge did not provide any affidavit or new testimony to support his petition, and the plea hearing transcript contains no discussion of any car collision, pain, or treatment needs. The district court was nonetheless aware of Cridge's collision because the collision had led the court to revoke Cridge's conditional release several weeks before the plea hearing; Cridge had crashed a stolen vehicle just after midnight on January 1. He had complained of injuries, and police took him to a hospital for treatment.

The district court considered Cridge's written allegations supporting his arguments, and it denied his petition. Cridge appeals.

## D E C I S I O N

A defendant has a right to withdraw his guilty plea after sentencing only if he proves to the court that "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1; *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). He can prove manifest injustice if he can establish that constitutional requirements were not met. *Raleigh*, 778 N.W.2d at 94 (citing *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970)). The Constitution requires a guilty plea to be accurate, voluntary, and

3

intelligent. *Id.* Whether the circumstances of a guilty plea satisfy the constitutional requirements is a legal question, which we assess de novo. *Id.* But our review of the postconviction court's fact findings is limited to whether evidence in the record supports them. *Butala v. State*, 664 N.W.2d 333, 338 (Minn. 2003).

Cridge argues that his guilty plea was not voluntary. We examine the circumstances of a guilty plea to determine whether the plea is voluntary. *Raleigh*, 778 N.W.2d at 96. We consider all the relevant circumstances to ensure that a guilty plea does not arise from improper pressure or coercion. *Id.* Cridge marked on his signed plea petition that no one promised anything or threatened him to obtain the plea and that no plea agreement existed. And at Cridge's plea hearing, his lawyer acknowledged that Cridge was making a "straight plea to the court." Cridge maintains that his plea was not voluntary because it was "improperly influenced by the pain he was experiencing as a result of the car accident" and because he "needed to seek medical attention." He suggests a connection between his supposed treatment needs and his release before sentencing. But his plea petition states that he was not pleading guilty to avoid pretrial incarceration. And the preconviction record contains no evidence that Cridge needed medical care. Even during his postconviction proceeding, Cridge failed to specify any alleged medical problem. The district court could reasonably infer that he was not experiencing overwhelming pain during the plea hearing because he testified at the hearing that he was in a good state of mind. Cridge's duty to tell the truth at his plea hearing was a fundamental and obvious obligation. *See Anderson v. State*, 746 N.W.2d 901, 907 (Minn. App. 2008). The postconviction court was justified in crediting Cridge's

4

preconviction statements to the district court over his postconviction allegations. *See Coolen v. State*, 288 Minn. 44, 49, 50–51, 179 N.W.2d 81, 85–86 (1970).

We add that even if Cridge did have a genuine medical need, he has not established coercion because he does not establish (or even allege) that the state made access to treatment contingent on his pleading guilty or that he requested treatment before making his plea. In *Perkins v. State*, the supreme court affirmed the denial of a petition for postconviction relief under similar circumstances. 559 N.W.2d 678 (Minn. 1997). Perkins sought to withdraw his guilty plea on the ground that, because he wanted to leave jail to receive medical treatment, his plea was not voluntary and intelligent. *Id.* at 690. The supreme court held that Perkins, who had "full-blown AIDS," was not entitled to postconviction relief because he was competent at the time of the plea hearing and jail officials had tried to meet his medical needs. *Id.* at 691–92. Like Perkins, Cridge had opportunities to express health concerns but did not do so. *See id.* at 691. And even now Cridge does not allege that the state withheld care. We conclude that he presented no evidence to the district court that the state subjected him to any improper pressure or coercion rendering his plea involuntary. *See Raleigh*, 778 N.W.2d at 96.

In his supplemental pro se brief, Cridge argues that his plea was unintelligent. For a guilty plea to be intelligent, a defendant must understand "the charges against him, the rights he is waiving, and the consequences of his plea." *Id.* Cridge broadly asserts that he did not understand what was happening at his plea hearing, but he offers no details or supporting evidence. He does not claim that he misunderstood the charge against him, his rights, or the consequences of his decision. To the contrary, Cridge told the court that he

5

was of sound mind and understood what was happening. Nothing in the transcript indicates confusion. And his signed plea petition likewise specifically states that he understood the charges, his rights, and the consequences of pleading guilty.

The district court's findings are well-supported. We hold that Cridge's plea was both voluntary and intelligent.

**Affirmed.**